EDWARD L. GAUVREAU, APPELLANT, v. CHARLES I. VAN PATTEN, APPELLEE.

FILED DECEMBER 17, 1908. No. 15,806.

1. Elections: BALLOTS: MARKING. The provision in section 155, art. I, ch. 26, Comp. St. 1907, that "no elector shall place any mark upon his ballot by which it may afterwards be identified as the one voted by him," and the instruction given in schedule B, sec. 159 of said chapter, "Do not make any mark on the ballot save as above directed," are directory only.

2. ——: ——: ——. Where an elector, who has already regularly and in due form voted for candidates for all of the offices designated on the official ballot, attempts to vote for a person for some office not designated on such official ballot by writing on another part of his ballot the name of such person and the office which he desires him to fill, such marking of said ballot will not avoid the ballot as to the candidates for whom he properly voted for such designated offices, unless it appears from an inspection of the ballot, aided by evidence aliunde if offered, that such marking was done for the purpose of distinguishing the ballot, or might be reasonably thought so to be intended.

APPEAL from the district court for Adams county: HARRY S. DUNGAN, JUDGE. Affirmed.

John C. Stevens and Walter M. Crow, for appellant.

R. A. Batty and J. W. James, contra.

FAWCETT, J.

On April 7, 1908, a general city election was held in the city of Hastings for the election of one councilman from

each ward of the city. In the Second ward there were two candidates for election, each of whom had been nominated by petition, viz., E. L. Gauvreau, whom we will designate as plaintiff, and C. I. Van Patten, whom we will designate as defendant. The official ballot prepared by the city clerk was as follows:

"OFFICIAL BALLOT.

"SECOND WARD.

"FOR COUNCILMAN.      Vote for ONE.

"E. L. GAUVREAU ..................By petition ☐
"C. I. VAN PATTEN.................By petition ☐
".............................................☐"

The result of the election as found by the canvassing board gave defendant 294 votes and plaintiff 261. Plaintiff, in the county court of Adams county, instituted proceedings to contest said election, claiming that 87 illegal votes had been counted for defendant. There was a trial in the county court, which resulted in a finding that 47 votes had been counted for defendant which ought not to have been so counted, and judgment that plaintiff had been elected by a majority of 12. A writ of ouster was issued and plaintiff put in possession of the office. Defendant thereupon took an appeal to the district court. The district court found that there were cast and counted for defendant 294 votes, of which 238 were regular in all respects and had no marks thereon except the cross made within the square; that there were cast and counted for plaintiff 261 votes, 255 of which were regular in all respects and had no marks thereon except the cross in the square opposite the name of plaintiff, and further found that defendant had been elected councilman by a majority of 29 votes. A writ of ouster was issued and defendant put in possession of the office. From the judgment of the district court this appeal is prosecuted.

Upon 44 ballots which the district court found had markings on, but were still legal, the voters had regularly

and in due form made their X in the square opposite defendant's name. After doing so, they, for some reason not explained in the record, wrote upon their ballots, in some instances below and in others above the space designated for voting for councilman, one or the other of the following: "U. S. Rohrer for mayor [X];" "Rohrer for mayor [X];" "For mayor U. S. Rohrer [X];" "J. M. Daily for city treasurer [X];" "For city treasurer, J. M. Daily [X];" "U. S. Rohrer for mayor." Objections were made to some of the other ballots cast for each of the parties, but, as a determination of the legality of the 44 votes above referred to will determine which of the two candidates was elected as councilman, we deem it unnecessary to consider any of the other ballots. To the counting of the 44 ballots above referred to, plaintiff objected, basing his objection on the things written thereon. The above 44 ballots being conceded by both parties to be as above described, the only question for consideration is one of law.

Section 155, art. I, ch. 26, Comp. St. 1907, among other things, provides: "No elector shall place any mark upon his ballot by which it may afterwards be identified as the one voted by him. * * * Whoever shall violate any of the provisions of this section shall, upon conviction thereof in any court of competent jurisdiction be fined in any sum not less than twenty-five dollars nor more than one hundred dollars, and adjudged to pay the costs of prosecution." In section 159, schedule B, entitled "Instructions to Voters," it is said: "Do not make any mark on the ballot save as above directed." Prior to 1899 there was added to this clause of schedule B the words "or the ballot will not be counted." In 1899 the legislature, evidently concluding that that penalty was too drastic, eliminated the words "or the ballot will not be counted," so that schedule B now stands simply as an admonition to the voter not to make any mark on the ballot save as above directed. The penalty provided, therefore, for marking a ballot other than as directed is a fine of not less than $25

nor more than $100; but the marking which would sub-
ject the voter to such penalty in our judgment is such a
marking that the ballot could afterwards be identified as
the one voted by him, and not any such marking as would
not so identify the ballot; the purpose of the law being to
preserve the secrecy of the ballot, and to prevent design-
ing persons from corrupting a voter and arranging with
him for a private marking which would enable him to
prove that he had "delivered the goods." In *State v.
Russell,* 34 Neb. 116, Mr. Justice POST quotes from the
statute the paragraph, "No elector shall place any mark
upon his ballot by which it may afterwards be identified
as the one he voted," and then says: "It will be noticed
that a ballot marked in violation of the foregoing provis-
ion is not declared to be void. The force of the objection
is apparent, however, if the effect of our construction
would be to defeat or interfere with the secrecy of the
ballot, since that is one of the primary objects of the law.
The construction which we have given the statute will not,
however, be attended with any such effect. It is not every
mark by means of which a ballot might subsequently be
identified which is a violation of the statute. The mark
prohibited by law is such a one, whether letters, figures, or
characters, as shows an intention on the part of the voter
to distinguish his particular ballot from others of its class,
and not one that is common to and not distinguishable
from others of a designated class. * * * We are aware
that our views on this branch of the subject are not in
harmony with the recent cases in the supreme court of
Connecticut, viz., *Talcott v. Philbrick,* 59 Conn. 472, and
*Fields v. Osborne,* 60 Conn. 544. In the last case, under
a statute substantially like ours, but which authorizes the
printing of tickets by the respective political parties, it
was held that the name on the tickets of one party, of a
candidate for judge of probate when said office could not
be filled at that election, and on the other of additional
words descriptive of one of the offices, were distinguishing
marks for which the ballots of both parties should be re-

jected. To our minds, however, the reasoning of the dissenting judges is the more satisfactory and convincing and certainly more in accord with the weight of authority. We think, too, that the construction given our statute is most promotive of fairness and purity in elections, and less liable to result in the disfranchising of honest voters through mere omissions or mistakes of their own or the negligence or design of public officers." A careful reconsideration of the above reasoning by Mr. Justice Post has confirmed us in our opinion of the soundness of his reasoning and the justness of his conclusions.

Section 151, art. I, ch. 26, provides: "In the canvass of the votes any ballot which is not indorsed as provided in this act by the signature of two (2) judges upon the back thereof, shall be void and shall not be counted, and any ballots or parts of a ballot from which it is impossible to determine the elector's choice shall be void and shall not be counted, provided, that when a ballot is sufficiently plain to gather therefrom a part of the voter's intention, that it shall be the duty of the judges of election to count such part." In commenting on that section in *State v. Russell, supra,* it is said: "It may be contended by respondent's counsel, that the proviso in the last section was intended to apply only to ballots otherwise regular, but on which the voter has failed through negligence, illiteracy, or other cause to clearly express his intention as to every office named thereon. The inference is strong, however, from the language of the several sections to which reference has been made, that the legislature, by declaring a limited number of provisions to be mandatory, and a compliance therewith essential to a legal ballot, intended the other provisions as directory only." Mr. Wigmore, in an appendix to the second edition of his treatise on the Australian Ballot System, p. 193, after examining all of the reported cases upon that branch of the subject, concludes in the following language: "Wherever our statutes do not expressly declare that particular informalities avoid the ballot, it would seem best to consider their require-

ments as directory only. The whole purpose of the ballot as an institution is to obtain a correct expression of intention; and if in a given case the intention is clear, it is an entire misconception of the purpose of the requirements to treat them as essentials, that is, as objects in themselves, and not merely as means." To the same effect are *Bingham v. Broadwell,* 73 Neb. 605; *Griffith v. Bonawitz,* 73 Neb. 622.

In *Parker v. Hughes,* 64 Kan. 216, it is said: "Mr. Justice Ellis is of the opinion that not only must those ballots which are marked in the manner forbidden by section 25 be excluded, but also ballots marked in contravention of the terms of the penal section 27—that is, a ballot bearing a distinguishing mark purposely made should be rejected if the mark is of such nature, or is so placed on the ballot, that the judges or courts might find, in the absence of testimony, or upon testimony if offered, that there were reasonable grounds for believing that such mark was made by the voter with the intent that his ballot should be distinguished from others in the box; that, in determining what ballots should be counted, the court should look at the questioned one and from such inspection, aided by the notorious facts and circumstances of the election at which it was cast, determine whether the questioned mark was intended by the voter as a distinguishing mark or not, and if, upon such inspection and consideration, aided by evidence *aliunde* if offered, the court should conclude that the mark was made for the purpose of distinguishing the ballot, or might be reasonably thought so to be intended, the ballot should not be counted." In that case 176 ballots had been doubly marked by reason of the fact that the name of the candidate for whom the electors were voting appeared upon the ticket under the title "Democratic Party," and also under the title, "Citizens' Ticket." In commenting on that fact the Kansas court say: "It is not contended by the defendant that these double marked ballots, of which there are some 176, are in terms excluded from the count by the

statute, but only that they must be excluded because such double marking constitutes a distinguishing mark, by which it may be inferred that the voter sought to distinguish his ballot for the purpose of being able to assure a purchaser of votes that he had 'delivered the goods.' It must be admitted that these marks do not necessarily indicate a corrupt purpose. It is as reasonable, or more reasonable, to say that the voter so marked his ballot out of a superabundance of caution, or because he found Mr. Parker's name printed twice and supposed therefore that he was to put down two crosses, as to say that his act must be explained upon the hypothesis of a corrupt motive. This is made doubly forceful when we remember the large number of ballots so marked, coming from all parts of the city. It is the duty of the court to ascertain the intent of the voter, and, if it may fairly and reasonably deduce a motive consonant with honesty, rather than dishonesty, from his ballot, to count the same for the candidate of his choice, rather than to disfranchise him. A distinguishing mark, to warrant the rejection of the ballot, must be found to have been made for the purpose of identification."

In line with the reasoning of the Kansas court, the large number of ballots (44) marked as hereinbefore indicated, cast by that many different voters, negatives the idea that the ballots were so marked with the intention on the part of the voter to distinguish his ballot in such a manner that it might be identified as the one cast by him. So far as the office of councilman was concerned, the voters so marking their ballots could not have been actuated by corrupt or improper motives. They had already regularly and properly marked their ballots for the office of councilman, and the writing of the names of Mr. Rohrer for mayor or Mr. Daily for treasurer in no manner affected their votes for councilmen. What their motive may have been in attempting to vote for a mayor and treasurer in addition to the votes which they had cast for councilman is not explained in the record, and we cannot impute to

them any corrupt or improper motive. That they all intended to vote for the defendant for councilman is clear and unmistakable, and, in the absence of a statute avoiding their ballot for what they did in addition thereto, we think it would be doing violence to the spirit of our election law to refuse to count the 44 ballots in controversy for defendant. The district court therefore did not err in so counting them. With these 44 votes credited to defendant, he had a clear majority over the plaintiff for councilman, and was duly elected.

The judgment of the district court is therefore

AFFIRMED.