STATE, EX REL. WILLIAM W. LANHAM, APPELLEE, V. CHARLES H. SHEETS, APPELLANT.

FILED NOVEMBER 22, 1929. NO. 26806.

*W. A. Stewart,* for appellant.

*N. M. York, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, THOMPSON, EBERLY and DAY, JJ., and REDICK, District Judge.

REDICK, District Judge.

This is a proceeding in *quo warranto* to test the respective rights of the relator, William W. Lanham, and the respondent, Charles H. Sheets, to the elective office of member of the board of education of school district No. 11 in Dawson county. The matter was tried to the court and resulted in a judgment declaring the relator duly elected to said office and that respondent be ousted from the same, and the latter appeals.

The facts are undisputed, and the controversy arises over the legality of certain ballots, 37 in number, cast for the relator. Without counting these disputed ballots the respondent received 274 votes and the relator 252; but, if the disputed ballots are to be counted, the relator received 289 votes, and upon a recount 291 votes, thereby giving him the majority entitling him to the office.

The names of only two candidates were printed on the ballot, "B. G. Richey, Peoples Ticket," and "C. H. Sheets, by Petition, and Citizens Ticket." All the votes for relator were written on the ballot in the place provided for that

purpose, and a cross placed by the voter in the square to the left of the written name, in every case except in the 37 disputed ballots. The respondent claims that these latter ballots are invalid and should not be counted because of the failure of the voter to place a cross opposite the written name; the relator *contra*. The solution of the problem depends upon the proper construction of certain sections of the Australian ballot law and whether or not the provisions thereof material to the inquiry are mandatory or directory.

The Australian ballot law in this state was first enacted in 1891 (Laws 1891, ch. 24) and contained, among others, the following provisions concerning the manner of voting; only such parts being quoted as are material to our inquiry:

"Section 13. Nothing in this act contained shall prevent any voter from writing on his ballot the name of any person for whom he desires to vote, for any office, and such vote shall be counted the same as if printed upon the ballot and marked by the voter."

"Section 20. The elector shall then forthwith proceed alone into a compartment, if one be then unoccupied, and shall prepare his ballot by marking in the appropriate margin or place a cross (X) with ink opposite the name of the candidate of his choice for each office to be filled, or by filling in with ink the name of the candidate of his choice in the blank space provided therefor, and marking a cross (X) with ink opposite thereto."

Cards of instruction for the voters were provided by Schedule B of the act, and contained the following:

"7. If you wish to vote for any person whose name does not appear upon the ballot, write or insert his full name in the blank space on the ballot under the proper office you wish him to hold, and make a cross mark in the proper margin opposite the same."

These provisions, in substantially the same language, remained in force until 1917 (Laws 1917, ch. 33) when the section providing for the manner of marking the ballots was amended by omitting that portion of section 20 of

the act of 1891, quoted above, and subsequent acts amendatory thereto, providing for writing in the name of the person for whom the voter desired to vote (whose name was not printed on the ballot) and marking a cross opposite. But this last act contained the following:

"If the voter does not wish to vote a straight ticket he shall make a cross in the square to the left of every candidate for whom he desires to vote." Laws 1917, ch. 33, sec. 3.

With the exception of the provision quoted from section 20, ch. 24, Laws 1891, the excerpts contained in the above quotations are the law at this time. See Comp. St. 1922, secs. 2028, 1979, and section 1969, as amended by chapter 115, Laws 1925, and section 1951, as amended by chapter 116, Laws 1925. It will be noted that prior to the act of 1917 the special requirement that a cross be placed opposite a name written in the ballot was contained in the main body of the act as well as in the instructions to voters in Schedule B, whereas since such amendment it appears only in the schedule. Is the requirement mandatory so that a failure to comply with it invalidates the ballot, or is it merely directory so that the ballot may be received and counted if the intention of the voter may be clearly determined therefrom?

In support of his contention that the requirement in question is mandatory, appellant cites *Mauck v. Brown*, 59 Neb. 382, and *State v. Hogeboom*, 103 Neb. 603, but neither of these cases involved the precise point under discussion. Neither of them involved ballots in which the name of a candidate was written in and no cross placed opposite such name. In the latter case the name was written in but a cross placed opposite. Appellant also cites *Martin v. Miles*, 46 Neb. 772, holding:

"The provision of section 20, act of 1891 ('Australian Ballot Law'), for the expressing of the voter's intention by a mark opposite the name of the candidate of his choice, is mandatory, and the manner thus prescribed is exclusive of all others; and such is the rule whether the names of candidates be printed on the ballot or written thereon by the voter."

The questioned ballots in that case were marked precisely the same as in this—the names were written in but no cross placed opposite. The case is therefore squarely in point, and, if adhered to, would require a reversal of the judgment. We are not, however, entirely satisfied with that decision. The learned judge who wrote that opinion does not refer to section 25 of that act, which reads as follows:

"In the canvass of the votes any ballot which is not indorsed, as provided in this act, by the signature of two (2) judges upon the back thereof, shall be void and shall not be counted, and any ballot or parts of a ballot from which it is impossible to determine the elector's choice shall be void and shall not be counted: *Provided*, that when a ballot is sufficiently plain to gather therefrom a part of the voter's intention, it shall be the duty of the judges of election to count such part."

Of course, the object of the election is to determine the will of the majority of the electors as to whom they desire to fill the offices, and it seems to us that, by the provision just quoted, the legislature intended to insure the counting of all ballots from which the intention of the voter could be clearly gathered, regardless of the particular manner in which such intention was evinced. There should be no need for discussion of what the voter meant by writing in the name of a party in the proper place upon the ballot. He was authorized so to do only for the specific purpose of indicating the candidate for whom he desired to vote. We can conceive of no other purpose he could have, and certainly he could accomplish none other. An intention to vote for the party whose name is written in is the only logical conclusion to be drawn from the fact, in view of the declared purpose for which it was authorized. The statute declares a simple manner in which the voter may indicate his intention, by placing an X opposite the name, and then declares that the vote shall be counted if the ballot is sufficiently plain to gather the voter's intention. This latter provision was evidently inserted to prevent the disfranchisement of the voter by reason of

his failure to technically comply with every requirement of a somewhat complicated law. It may further be noted that that decision was based in part upon the provision of section 20, requiring a mark opposite the written name, whereas such provision, though continued in subsequent statutes, was eliminated by the amendment of 1917 (Laws 1917, ch. 33, sec. 3) which did not deal with the question of writing in the names of candidates, but merely provided that the voter "shall make a cross in the square to the left of every candidate for whom he desires to vote." We think that the application of this requirement should be confined to the ballot as printed, especially in view of section 13, above quoted, which requires the counting of ballots for candidates whose names are written in, without reference to any other marking. True, the amendment of 1917 did not disturb paragraph 7 of the schedule, but it did eliminate such requirement from the body of the act. The legislature must have had some purpose in adopting the amendment; but if the law was to remain the same notwithstanding such adoption the amendment would be of no effect.

Section 13 and paragraph 7 of the schedule are in apparent contradiction, one requiring the vote to be counted when the name is written in, and the other requiring something further to be done. If we were required to choose between the two provisions, we would unhesitatingly select section 13 as being more favorable to an untrammeled expression of the will of the voter. We prefer, however, to hold the provision of paragraph 7 to be merely directory as indicating the method by which the voter may express his choice. We are sustained in this by a number of decisions of this court. In *State v. Russell*, 34 Neb. 116, at a time when the statute required that the marking be done in ink, it was held that a pencil marking was a substantial compliance. To the same effect, *Spurgin v. Thompson*, 37 Neb. 39. In *Bingham v. Broadwell*, 73 Neb. 605, ballots were counted where the mark was an "H," or a wheel, or a star-like mark, and a number of other irregularities were shown, but the intention of

the voter was clear. In *Griffith v. Bonawitz*, 73 Neb. 622, a number of irregular marks were held not to invalidate the ballot. There were also some ballots where a name was written in and no mark placed opposite it. Whether or not these last ballots were counted is not clear, but the court, after referring to that fact, said that only one class of ballots called for special discussion, to wit, those indorsed by one judge of election and by the initials of another. It was further held in that case: "On the trial of a contested election ballots will not be treated as void simply because of irregular or unauthorized markings or mutilations which appear to have been innocently made as the result of awkwardness, inattention, mistake, or ignorance, if the lawful intent of the voter can be ascertained therefrom." In *White v. Slama*, 89 Neb. 65, ballots marked by drawing a straight line through the party circle, instead of marking a cross therein, were held valid. In *Shaw v. Stewart*, 115 Neb. 315, a controlling number of ballots had the name of one of the candidates written in and a cross placed opposite, although the name of such candidate was printed upon the ballot, and while the statute only authorized writing the name in cases where it was not so printed, the ballots were held valid. Such provisions, as well as that requiring the making of a cross in the square opposite the written name, were said to be directory only. In that case we cited *Gauvreau v. Van Patten*, 83 Neb. 64, which quoted with approval the following from 2 Wigmore, Australian Ballot System, 193 (Appendix):

"Wherever our statutes do not expressly declare that particular informalities avoid the ballot, it would seem best to consider their requirements as directory only. The whole purpose of the ballot as an institution is to obtain a correct expression of intention; and if in a given case the intention is clear, it is an entire misconception of the purpose of the requirements to treat them as essentials, that is, as objects in themselves, and not merely as means."

In *State v. Russell*, 34 Neb. 116, *supra*, after stating the

two principles governing the construction of statutes of this character to be: (1) The supremacy of the legislative will; and (2) to give effect to the expressed will of the majority, it was said:

"Recognizing the principle first stated the courts have uniformly held that when the statute expressly or by fair implication declares any act to be essential to a valid election, or that an act shall be performed in a given manner and no other, such provisions are mandatory and exclusive. By an application of the second principle, the courts, in order to give effect to the will of the majority and to prevent the disfranchising of legal voters, have quite as uniformly held those provisions to be formal and directory merely, which are not essential to a fair election, unless such provisions are declared to be essential by the statute itself."

Sections 2025 to 2030, Comp. St. 1922, define the causes for which a ballot may be rejected, but do not include a failure of the voter to comply strictly with directions as to marking. It seems perfectly clear that a precise method of marking the ballot is not essential to a fair election, where the method selected clearly indicates the voter's choice, and no question of fraud, or violation of statutes essentially mandatory, is involved. To hold otherwise might result in a defeat of the very object sought by the election, by placing in office a candidate not desired by a majority of the voters.

All of the cases above cited, beginning with *State v. Russell,* in effect hold that the provisions as to the manner of marking the ballot are merely directory, and that where the intention of the voter is clearly apparent, though not expressed in the precise manner of the statute, the ballot should be counted. We consider this a correct expression of the law. Upon a careful consideration of the provisions of the statute, the purpose of the law, and our previous decisions thereon, we are of the opinion that the provisions of paragraph 7, above quoted, now, substantially, paragraph 4 of Schedule B, section 1951, Comp. St. 1922, as amended by chapter 116, Laws 1925, and sec-

tion 1969, as amended by chapter 115, Laws of 1925, requiring the placing of a cross in the square to the left of every candidate for whom it is desired to vote, must be considered merely directory, and that the disputed ballots were properly counted.

In so far as the cases of *Martin v. Miles,* 46 Neb. 772, and *Mauck v. Brown,* 59 Neb. 382, conflict with the opinions herein expressed, they are disapproved. It is not necessary to discuss other questions presented by the briefs.

A motion for a new trial was filed by the appellant in the court below, on the ground of newly discovered evidence, and was overruled, upon which ruling the appellant assigns error. We are unable to review the action of the court in that regard because the affidavits upon which such ruling was based have not been preserved by proper bill of exceptions, and we cannot consider them. *Omaha Fire Ins. Co. v. Dierks & White,* 43 Neb. 473. Moreover, by stipulation of the parties in this record, appellant received 274 votes and appellee 252 votes, about which there is no controversy. The additional votes, if counted, gave the appellee a majority.

Finding no error in the record, the judgment of the district court is

AFFIRMED.