IN RE ESTATE OF ALICE R. BALE, DECEASED. NEBRASKA METHODIST HOSPITAL, A CORPORATION, APPELLEE, V. JOHN McCLOUD ET AL., APPELLANTS.

52 N. W. 2d 325

Filed March 14, 1952. No. 33115.

*Lightner & Johnson,* and *Harlan A. Bryant,* for appellants.

*Joseph O. Burger,* and *Brower & Brower,* for appellee.

Heard before SIMMONS, C. J., MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Nebraska Methodist Hospital, hereinafter called proponent, filed its petition in the county court seeking to probate the alleged last will of Alice R. Bale. There, over objections filed by nephews, nieces, and a sister of

deceased, hereinafter called contestants, the will was admitted to probate. Contestants appealed therefrom to the district court. There a jury was duly empaneled and evidence was adduced by the parties. However, at the close of contestants' evidence the motion of proponent to discharge the jury and enter a judgment or direct a verdict for proponent was sustained, and a judgment was rendered by the trial court ordering the will to be admitted to probate. Contestants' motion and supplemental motion for new trial were overruled and they appealed, assigning substantially that the trial court erred: (1) In withdrawing the cause from the jury and rendering judgment in favor of proponent; and (2) in failing to grant a new trial for newly discovered evidence. We conclude that the assignments should not be sustained.

We turn first to the second assignment which is controlled by State ex rel. Lanham v. Sheets, 119 Neb. 145, 227 N. W. 457, wherein it was specifically held that: "Affidavits in support of a motion for new trial not embodied in a bill of exceptions will not be considered on appeal." In that opinion it was said: "A motion for a new trial was filed by the appellant in the court below, on the ground of newly discovered evidence, and was overruled, upon which ruling the appellant assigns error. We are unable to review the action of the court in that regard because the affidavits upon which such ruling was based have not been preserved by proper bill of exceptions, and we cannot consider them. Omaha Fire Ins. Co. v. Dierks & White, 43 Neb. 473." The situation in the case at bar is identical therewith. Further discussion is not necessary. It is sufficient for us to say that the assignment cannot be reviewed by this court.

The trial court rendered judgment as it did upon the grounds that after proponents had made a prima facie case the contestants adduced no competent evidence which could support a conclusion that there was any failure of lawful execution, testamentary incapacity, or

undue influence. As a matter of fact the record discloses not only that there was no evidence adduced by contestants upon the question of undue influence but also the decree discloses that contestants withdrew that issue in the trial court. It was so conceded in oral argument to this court. That issue therefore requires no further discussion.

We turn then to the questions of: (1) Whether or not proponent made a prima facie case; and (2) whether or not contestants adduced any competent evidence which would make execution and testamentary capacity issues of fact for the jury rather than of law for the court. We conclude that the first should be answered in the affirmative, and the second in the negative.

Without contradiction proponents established execution of the will as provided by law. One subscribing witness was shown to be dead, but the other affirmatively testified at length with regard to its execution, and the signature of deceased on the will was conclusively established not only by such witness but also by another witness and by documentary evidence appearing in the record. Upon such issue contestants adduced no competent evidence whatever.

As a matter of course the rule is that proponent's motion for directed verdict must be treated as an admission of all the competent evidence adduced by contestants, and all proper inferences to be drawn therefrom. In re Estate of Benson, 153 Neb. 824, 46 N. W. 2d 176. In such case, citing other applicable authorities from this jurisdiction, it was held: "It is the duty of trial courts to determine the issues upon which there is competent evidence and submit them, and them only, to the jury. In a will contest on the ground of mental incompetency and undue influence, if the evidence is insufficient to sustain a verdict upon either of such issues in favor of the contestants, then the trial court should withdraw both issues from the jury and direct a verdict."

Other well-established and controlling rules of law

in cases comparable with that at bar will also be found in such case and in In re Estate of Cheney, 78 Neb. 274, 110 N. W. 731; In re Estate of Bose, 136 Neb. 156, 285 N. W. 319; In re Estate of Witte, 145 Neb. 295, 16 N. W. 2d 203; and In re Estate of Wahl, 151 Neb. 812, 39 N. W. 2d 783. To repeat them here would serve no purpose except to unduly prolong this opinion.

In the light of such rules we have examined the record. In doing so, it is clearly apparent that the evidence adduced by proponent was sufficient to make a prima facie case upon the issue of testamentary capacity, and that contestants adduced no competent evidence which could sustain any reasonable inference that testatrix was incompetent to make a will.

The will was executed on June 8, 1927. Its provisions need not be recited here. It is sufficient for us to say that we find nothing in it which appears to be unjust or unreasonable. In the execution thereof testatrix gave all of her property to proponent in trust for the care and welfare of a brother who predeceased but lived with her during his lifetime, and for the promotion of proponent's charitable purposes thereafter. None of the contestants had contributed to her estate or given her any reason, by conduct or otherwise, to expect that testatrix would give her property to any of them. The proponent had cared for another deceased brother of testatrix during his last illness, and she was not unmindful of that fact. Under the contemporaneous circumstances, conditions and history of events leading up to the execution of the will, we find nothing in its provisions inferring any want of testamentary capacity.

Proponents made their prima facie case upon the issue of testamentary capacity by a subscribing witness, and one who had well and personally known testatrix for many years. The subscribing witness testified substantially that he went with others to her home on June 8, 1927, in response to a request that he act as a subscribing witness. He detailed what took place there at that time

with regard to acts and conversations preliminary to signing the will by testatrix and the subscribing witnesses. In other words, he testified that the will was read to testatrix. She then said that she understood its provisions which were as she wanted them, and it was then duly executed. Such witness did not give general answers upon the question of her mental capacity, but answered specific questions which contained the necessary standards as to the quality of mind necessary to constitute testamentary capacity, to wit: That testatrix understood the nature of her acts, the extent of her property and the proposed disposition of it, and knew the natural objects of her bounty.

Another witness, a hardware dealer, testified that he had known testatrix for many years, beginning in 1923. She was a customer in his store from about that time until in 1940 or 1941, and at or about the date of the will and subsequently testatrix made purchases from him, well knowing exactly what she wanted, and giving checks in payment therefor. The checks appear in the record, bearing her unquestioned signatures comparable with that on the will. Such witness likewise testified, as did the subscribing witness, with regard to her testamentary capacity to execute a will.

On the other hand, all four of contestants' witnesses simply testified that in their opinion testatrix was "not of sound mind" or "not really of sound mind" or "I can't say she was slipping but then after she got most of the property to look after— * * * She was not (of sound mind)." It appears, however, that not one question asked, nor any answer of such witnesses, to all of which proponent appropriately objected and moved to strike, even intimated much less stated any standard of mental quality upon which testamentary incapacity could be predicated. In other words, there was no competent evidence adduced by contestants to negative that testatrix: (1) Understood the nature of her acts; or (2) knew the extent of her property; or (3) under-

stood the proposed disposition of it; or (4) knew the natural objects of her bounty. Thus the issue of testamentary capacity became a question of law for the court.

There was some evidence adduced that testatrix was not neat, did not dress in the latest fashion but made her own clothes, was a little eccentric or old-fashioned, and that she was a woman of little education who probably could not read or write except to sign her name. However, as heretofore observed, that was not sufficient to raise any inference that she did not possess testamentary capacity.

There was also some evidence that testatrix possessed quite a large estate in 1927 when the will was executed, but that it had dwindled to considerably less in 1950 when she died. What became of it during the 23 ensuing years was not shown. In that connection there was no evidence that such a situation resulted from mental incompetency. No inference could be drawn therefrom that she lacked testamentary capacity. For aught we know, it was used for her own support and comfort. We conclude that there was no competent evidence adduced by contestants to overcome the prima facie case made by proponent, and that the trial court properly withdrew the cause from the jury and rendered a judgment for proponent.

For the reasons heretofore stated, the judgment should be and hereby is affirmed.

AFFIRMED.