IN RE ESTATE OF ANNA ROSE NOVAK, DECEASED.
GLADWYN A. YOUNGS, PERSONAL REPRESENTATIVE OF THE ESTATE OF ANNA ROSE NOVAK, DECEASED, APPELLANT, V. ROSE HITZ AND STATE OF NEBRASKA, APPELLEES.

458 N.W.2d 221

Filed July 27, 1990.    No. 88-431.

Charles M. Pallesen and Richard P. Garden, Jr., of Cline, Williams, Wright, Johnson & Oldfather, for appellant.

Tad D. Eickman and Alan L. Steinacher, of Steinacher, Vosoba & Hanson, for appellees.

BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

BOSLAUGH, J.

This is an appeal in a will contest. The testatrix, Anna Rose Novak, died on December 11, 1985.

On February 13, 1986, Gladwyn A. Youngs, the sole beneficiary named in the will and the person nominated as personal representative in the will, filed an application for informal probate. On this same date a statement and order of informal probate was issued, and Youngs was appointed personal representative.

On April 2, 1986, Rose Hitz, a friend of the decedent's, filed an application for formal probate. The application alleged that Hitz was a claimant against the estate; that prior to the death of the decedent, Youngs had borrowed approximately $30,000 from the decedent; that Hitz sought to prevent informal probate of the will because Youngs had been directed by the decedent to draft a will naming Hitz and her children as beneficiaries, but that in drafting the purported will Youngs substituted himself as beneficiary; and that at the time the purported will was executed, the decedent was seriously ill and a

patient in Lincoln General Hospital. The application further alleged that Youngs should be removed as personal representative and that a determination of heirship should be made.

On July 14, 1986, Youngs filed an answer praying that the will be admitted to probate.

The trial commenced May 1, 1986. Although the record does not show that any pleadings had been filed by the State of Nebraska, an Assistant Attorney General was present and participated in the trial. Although undue influence or lack of testamentary capacity had not been specifically alleged in the application filed by Hitz, counsel for proponent Youngs stated that the proponent had no objection to proceeding with the trial as to "whatever objections are either plead [sic] or made today."

The will was offered and received in evidence. Since the will was "self proving," the contestant then had the burden of going forward. At the close of the contestant's evidence, the proponent moved that the application be dismissed. The county court found that the evidence of the contestant was insufficient to establish undue influence or lack of testamentary capacity and dismissed the application.

Upon appeal to the district court, that court found that the will was the result of undue influence, reversed the judgment of the county court, and struck the will from probate.

The proponent has appealed to this court. His principal assignments of error are that the district court erred in finding that the will was the product of undue influence and in applying a presumption of undue influence in arriving at its decision.

Undue influence sufficient to defeat a will is such manipulation as destroys the free agency of the testator and substitutes another's purpose for that of the testator. *In re Estate of Price*, 223 Neb. 12, 388 N.W.2d 72 (1986).

The elements which must be proved to establish undue influence are that (1) the testator was subject to undue influence, (2) there was an opportunity to exercise such influence, (3) there was a disposition to exercise such influence, and (4) the result was clearly the effect of such influence. *Id*.

The burden of proof on the issue of undue influence is on the party contesting the will. *McGowan v. McGowan*, 197 Neb.

596, 250 N.W.2d 234 (1977).

When the party alleging undue influence establishes facts which show the relationship of the parties and their dealings to be such that a presumption of undue influence arises therefrom, the burden of going forward with the evidence then shifts to the opposite party. *Loomis v. Estate of Davenport*, 192 Neb. 461, 222 N.W.2d 369 (1974).

Where the evidence establishes there was no undue influence, the presumption disappears. The presumption is not evidence itself but only sustains the burden of proof until evidence rebutting the presumption is introduced. *Id.*

The record shows that the testatrix, Novak, was 87 years of age when she died, leaving a will which named the proponent, Youngs, as the sole beneficiary of her estate. The total value of her estate, including nonprobate items, was $258,508.92. Youngs received all of this property except a lady's diamond ring, valued at $1,475; a 20-year-old color television set; and a certificate of deposit payable on death to "Mrs. Rose Hitz."

Youngs had known the decedent since May or June 1978. He was introduced to her by his law partner, Stanley D. Cohen, whom Novak had engaged to probate her brother Frank's estate. Following this meeting, Youngs handled the probate of Novak's brother's estate.

Youngs and Novak became close friends while working on her brother's estate. This friendship continued after the estate was closed in March or April 1980.

Youngs occasionally shared his poetry and photography interests with Novak. He wrote some poems and took pictures for her. He also remembered her on holidays and her birthday with cards and small gifts.

Youngs and Cohen shared the fee earned from probating Novak's brother's estate. Novak was not happy about this arrangement and believed Cohen had stolen $10,000 from the estate. Although Youngs did not believe Cohen could have done such a thing and tried to convince Novak of his belief, she was not persuaded and insisted on giving Youngs an extra $15,000 to make up the difference she believed Cohen had unfairly received from her brother's estate. Youngs testified he did not want to accept the money; however, after consulting with

another attorney, he agreed to accept the money on the condition that it be structured as a loan. Youngs executed a promissory note to Novak and made several payments in the amount of $300. Later, Novak destroyed the note because she intended the money to be a gift.

The evidence shows that Novak, generally, had a good knowledge of her finances and investments. Youngs assisted Novak with her financial affairs from time to time; however, Novak selected her own investments. During Novak's final years following her illness in July 1983, she signed three or four checks each month for her recurring bills, and Youngs would complete and deliver the checks. Youngs always reviewed the canceled checks and bank statements with Novak and at no time did he sign a check for her.

Hitz testified that she had known the Novak family all her life. Both families had lived in Milligan, Nebraska. Her father had been a close friend of Novak's brother Frank. Hitz and Frank also became good friends, and at Frank's funeral, Hitz talked with Novak. After Frank's death, Hitz and Novak became friends, and they did many things together. Hitz gave Novak baked goods and vegetables from Hitz' garden, got groceries for her, and took Novak about in Hitz' automobile. When Novak became ill on July 29, 1983, Hitz took Novak to the emergency room at the hospital.

On July 29, Hitz found Novak in very poor health at her apartment. Hitz called Youngs and informed him of Novak's condition, and Hitz met Youngs for the first time that day.

Hitz stayed with Novak for most of the day, and on the evening of July 29, at the direction of Novak, Hitz prepared in her handwriting a document signed by Novak which provided: "I, Ann R. Novak want Rose Hitz to handle my personal business. Rose Hitz is to inherit all of my money & everything I own. She is to share it with her children—Randy, Rus, Rochelle." This document, which appears to contain the signature of Ann R. Novak, was not witnessed.

On July 30, 1983, after Novak was admitted to Lincoln General Hospital, she told Hitz that she wanted to make a will. Hitz contacted Youngs and told him that Novak wanted to make a will.

Acting on Hitz' request, Youngs testified that he visited Novak at the hospital and confirmed that she wanted to make a will. Novak had indicated to Youngs at least as early as 1979 that she wanted to remember him and perhaps a friend when the time came to arrange her estate. During the course of the conversation at the hospital, Youngs told Novak that if she still intended to remember him in her will, it would be necessary to obtain another attorney to prepare the will. Novak did not want another attorney to prepare her will. Youngs told her it was not necessary to include him in her will; however, if she desired to do so, she would be required to retain another attorney to prepare her will.

Apparently, Novak agreed to retain independent counsel to prepare her will and wanted an attorney of Czech heritage. According to Youngs, she selected Ronald Svoboda from a list of Czech names Youngs had prepared from the Nebraska State Bar Association's directory. Youngs had met Svoboda once or twice before at Masonic meetings.

Youngs contacted Svoboda and met him at his office in Weeping Water, Nebraska. Youngs told Svoboda that Novak was an elderly friend who had previously indicated she wanted to remember Youngs in her will. Youngs told Svoboda that he understood that Novak had no heirs and that she most likely would wish to remember Hitz, the Catholic church, and himself in her will.

Youngs requested that Svoboda not disclose the contents of the will to Youngs. He also told Novak that he did not want to know the contents of her will. Svoboda honored Youngs' request, and he did not send Youngs a copy of the will until after Novak's death.

Svoboda agreed to prepare Novak's will after discussing the ethical aspects with his law partners. On August 22, 1983, Svoboda visited Novak at the hospital and interviewed her for approximately 45 minutes. He learned that Novak had no relatives, that she knew where her money was invested and the value of her investments, and that she was aware of the size of her estate. He then reviewed with Novak the ultimate disposition of her estate.

Novak instructed Svoboda that a substantial payable-

on-death certificate of deposit would be arranged for Hitz and that she wanted Hitz to receive the diamond ring and the color television set; however, Novak did not want to include provisions for the certificate of deposit, ring, and television set in her will. Novak instructed Svoboda that the balance of her estate was to go to Youngs. Svoboda questioned Novak several times about the division of her estate to confirm that he understood her wishes.

After the initial interview, Svoboda prepared the will by hand, printing the dispositive provisions in the will, which had been partially typewritten prior to his meeting with Novak. He then gave the will to Novak and asked her to review it. He asked her if she had any questions, and she did not. The will was then executed by Novak and was witnessed by two nurses.

Novak's primary care physician testified as to Novak's mental condition on the date the will was executed. He testified that from the time of Novak's admission to the hospital until several days after the execution of the will, Novak was alert, attentive, and oriented. He stated that she had been able to give an accurate family history and concluded that although Novak had significant medical problems, she had sufficient mental capacity to execute a will on August 22, 1983.

Svoboda testified that he had wanted to prepare a fully typewritten will for Novak because he did not like the fact that her will was partially typewritten and partially filled in by hand. Although he had a fully typewritten will prepared later, it was never given to Novak to execute, and the will executed on August 22, 1983, was the will admitted to probate after her death.

Youngs paid Svoboda's fees with his personal funds.

Youngs argues that the facts were insufficient to raise a presumption of undue influence and that by applying the presumption, the district court improperly shifted the burden of proof from the contestant to Youngs.

While the existence of a confidential or fiduciary relationship will not alone, " 'according to the weight of authority, create a presumption of undue influence, it is a circumstance which, taken in connection with other suspicious circumstances,' " may justify an inference of undue influence.

*In re Lobb's Will*, 173 Or. 414, 431-32, 145 P.2d 808, 814 (1944). See, also, *In re Estate of Ankeny*, 238 Iowa 754, 28 N.W.2d 414 (1947); *McGowan v. McGowan*, 197 Neb. 596, 250 N.W.2d 234 (1977); *Loomis v. Estate of Davenport*, 192 Neb. 461, 222 N.W.2d 369 (1974); *In re Estate of Kajewski*, 134 Neb. 485, 279 N.W. 185 (1938); *Matter of Estate of Gonzales*, 108 N.M. 583, 775 P.2d 1300 (1988). Such suspicious circumstances, combined with a confidential or fiduciary relationship so as to raise a presumption of undue influence, include a vigorous campaign by a principal beneficiary's family to maintain intimate relations with the testator, lack of advice to the testator from an independent attorney, an elderly testator in weakened physical or mental condition, lack of consideration for the bequest, a disposition that is unnatural or unjust, the beneficiary's participation in procuring the will, and domination of the testator by the beneficiary. *In re Estate of Ankeny, supra; Matter of Estate of Gonzales, supra.*

Neb. Rev. Stat. § 30-2431 (Reissue 1989), which is adapted from the Uniform Probate Code, provides that the burden of proof of undue influence is on the contestants of the will. This section did not change the rules concerning the effect of a presumption of undue influence established by case law which were existing prior to the adoption of the code. *Matter of Estate of Gonzales, supra.* See, also, *McGowan v. McGowan, supra.*

The evidence of the contestant in this case established that a confidential and fiduciary relationship existed between the testatrix and the proponent. In addition thereto, her evidence established many suspicious circumstances. Although the evidence is in conflict, the testimony of Hitz was to the effect that the will in question was contrary to the expressed intentions of the testatrix.

In a will contest, a motion by the proponent to withdraw the issue of undue influence from consideration by the jury, when made at the close of the evidence of the contestant, admits the truth of all material and relevant evidence submitted by the contestant, and the contestant is to have it and all inferences fairly deducible therefrom viewed in the most favorable light in testing the correctness of the ruling of the court granting the motion. *In re Estate of Bainbridge*, 151 Neb. 142, 36 N.W.2d

625 (1949). When the evidence of the contestant is considered in accordance with this rule, it is clear that the motion of the proponent should have been overruled.

Facts which raise a presumption of undue influence are sufficient to withstand a motion for a directed verdict. *McGowan v. McGowan, supra.* In this case, the evidence of the contestant was sufficient to raise a presumption of undue influence. Accordingly, Youngs, as proponent of the will, then had the burden to go forward with evidence to rebut the presumption; however, because the county court erroneously dismissed the contestant's petition, Youngs has not had an opportunity to present evidence to rebut the presumption.

After the party alleging undue influence establishes facts which raise a presumption of undue influence, the burden of going forward with the evidence shifts to the proponent to rebut the presumption of undue influence. *Loomis v. Estate of Davenport, supra.* The burden of proof as to undue influence remains with the contestant throughout the trial, and after evidence has been introduced, the presumption disappears. *McGowan v. McGowan, supra; Loomis v. Estate of Davenport, supra.* The presumption of undue influence may be rebutted by proof that the testator had competent independent advice and that the will was his or her own voluntary act, or by other evidence of the circumstances surrounding the execution of the will. See, *Loomis v. Estate of Davenport,* 192 Neb. 461, 222 N.W.2d 369 (1974); *In re Estate of Kajewski,* 134 Neb. 485, 279 N.W. 185 (1938).

Both the district court and the county court decided the issue of undue influence as a matter of law. Although there is substantial evidence of undue influence in this case, we believe the evidence on the issue of undue influence presents a question of fact. Accordingly, the judgment of the district court is reversed, and the cause is remanded with directions to remand the cause to the county court for further proceedings in conformity with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.

HASTINGS, C.J., not participating.