IN RE ESTATE OF BEULAH TRUVETT ELLIS, DECEASED.
JEREMIAH WADE, APPELLANT, V.
CHRISTIAN CRUSADERS, APPELLEE.
616 N.W. 2d 59

Filed August 15, 2000.    No. A-99-630.

Vard R. Johnson, of Broom, Johnson & Clarkson, for appellant.

Gerald P. Laughlin, Ronald C. Jensen, and John F. Nownes III, of Baird, Holm, McEachen, Pedersen, Hamann & Strasheim, for appellee.

HANNON, INBODY, and CARLSON, Judges.

CARLSON, Judge.

## INTRODUCTION

Jeremiah Wade appeals from an entry of summary judgment, resulting in the dismissal of his objection to probate of the will of Beulah Truvett Ellis. For the reasons set forth below, we affirm.

## BACKGROUND

The essential facts of this case are not in dispute. Ellis died testate on January 1, 1996, at the age of 75. She had served in the U.S. Army during World War II and later worked as a secretary at Offutt Air Force Base, eventually retiring as a civil servant in January 1979. There was considerable evidence that Ellis was a loner, with few outside contacts other than her workplace, and that she seldom interacted with other family members or neighbors.

Ellis' will, a self-proved will executed on August 1, 1988, had been drafted by an Omaha attorney, Dana C. Bradford III. That will provided that the residue of her estate, estimated in the 1996 report of the special administrator at approximately $300,000, would go to Jarve Garrett, who had served as her attorney from approximately 1981 through at least 1988. Christian Crusaders is the contingent beneficiary of the residual estate. Ellis' will also contained the following provision: "Article VII. I have

intentionally and with full knowledge made no provision for my son, JEREMIAH "JERRY" WADE, and thereby specifically intend to completely disinherit him with the specific result that he not share in my estate."

Garrett died on October 6, 1990. The record shows that at the time of his death, Garrett was indebted to Ellis in the amount of $12,000, an unsecured debt to be repaid at a rate of 10 percent interest, memorialized in a promissory note signed by Garrett and dated April 22, 1989.

Christian Crusaders is a not-for-profit organization based in Waterloo, Iowa. The organization produces live radio broadcasts of the church services at Trinity Lutheran Church of Waterloo. The record shows that Ellis had made regular donations to Christian Crusaders since 1979, in amounts ranging from hundreds to thousands of dollars per year.

Wade is the illegitimate son of Ellis, born to her, at home, on September 29, 1951. At that time, Ellis lived in the home of her mother, Eleanor Phillips. Ellis had attempted to keep that pregnancy hidden. Phillips was Wade's principal childhood caregiver, and Wade referred to her as his mother; he called Ellis by her first name. The record suggests that Ellis seldom, if ever, acknowledged Wade as her son, and there is uncontroverted evidence that she treated him cruelly during the time they shared a residence, on at least one occasion whipping him with an electrical cord while he was tied to a post in the basement. Wade left Phillips' home in 1966. Ellis moved out of Phillips' home in approximately 1969, after a falling out with Phillips. Wade visited Ellis approximately a dozen times until 1980, when he resided with her for a 3-week period when he was experiencing financial difficulties. It is uncontroverted that Ellis routinely denied to neighbors and acquaintances that she had a son.

The record further shows that on or about September 4, 1989, prior to Garrett's death, Ellis contacted Bradford's office, seeking to remove Garrett from her will. The record further shows that an associate of Bradford's, Anthony Hruban, met with Ellis and drafted a proposed replacement will. That proposed will was mailed to Ellis on or about August 29, 1990. That draft would have, inter alia, removed Garrett from the will and made a $2,000 bequest to Christian Crusaders. Naomi Carter, who had

worked at Offutt Air Force Base with Ellis and was a longtime acquaintance, would have been the residual beneficiary; the contingent beneficiary was left blank. That draft also specifically disinherited Wade.

On or about July 1, 1991, some 10 months after Garrett's death, Hruban wrote to Ellis, requesting that she respond to the August 29, 1990, letter, and take the necessary steps to execute the new will. There is no showing that Ellis ever responded to this letter, and the proposed revised will was never executed.

Christian Crusaders petitioned the county court for Douglas County to admit Ellis' August 1, 1988, will to probate, and Wade objected, asserting that Ellis had lacked testamentary capacity to make and execute the will and that the will was a product of undue influence. Wade subsequently transferred the case to the district court for Douglas County, pursuant to Neb. Rev. Stat. § 30-2429.01 (Reissue 1995). Christian Crusaders then moved for summary judgment, which was granted on April 30, 1999. In its order, the district court held that no genuine issues of material fact existed as to Ellis' testamentary capacity. The court went on to hold that "Ellis could have been subject to undue influence from Garrett and that the distinct possibility exists that this undue influence caused Ellis to devise the residuary [sic] of her estate to Garrett." However, the court held that this issue of fact was not material, because "the application of the doctrine of partial invalidity would keep intact the valid portions of the will and sustain the bequest to Christian Crusaders."

Wade filed the instant appeal on May 28, 1999.

## ASSIGNMENT OF ERROR

Wade's two assignments of error may be summarized as a general assertion that the trial court erred in granting summary judgment. Specifically, he asserts that the trial court erred in finding that no genuine issues of material fact existed both as to the testamentary capacity of Ellis and as to whether the will was a product of undue influence.

## STANDARD OF REVIEW

■ In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against

whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Boyle v. Welsh*, 256 Neb. 118, 589 N.W.2d 118 (1999). The question on such review is not how a factual issue is to be decided, but whether any real issue of genuine fact exists. *Id.*

■ In an appellate review, the grant of a motion for summary judgment may be affirmed on any ground available to the trial court, even if it is not the same reasoning the trial court relied upon. *Foreman v. AS Mid-America*, 255 Neb. 323, 586 N.W.2d 290 (1998).

■ Proceedings to determine legal competency and alleged undue influence in a probate context sound in law, and the findings of the trier of fact will not be disturbed unless clearly wrong. *In re Estate of Disney*, 250 Neb. 703, 550 N.W.2d 919 (1996).

## ANALYSIS

A party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must furnish sufficient evidence to demonstrate that the moving party is entitled to judgment as a matter of law if the evidence presented remains uncontroverted. After the moving party has shown facts entitling it to judgment as a matter of law, the opposing party has the burden to present evidence showing an issue of material fact which prevents a judgment as a matter of law for the moving party. *In re Estate of Wagner*, 246 Neb. 625, 522 N.W.2d 159 (1994); *Ev. Luth. Soc. v. Buffalo Cty. Bd. of Equal.*, 243 Neb. 351, 500 N.W.2d 520 (1993).

*Testamentary Capacity.*

■ One possesses testamentary capacity if he or she understands the nature of his or her act in making a will, knows the extent and character of his or her property, knows and understands the proposed disposition of his or her property, and knows the natural objects of his or her bounty. *In re Estate of Villwok*, 226 Neb. 693, 413 N.W.2d 921 (1987); *In re Estate of Schoch*, 209 Neb. 812, 311 N.W.2d 903 (1981); *Anderson v. Claussen*, 196 Neb. 787, 246 N.W.2d 586 (1976). Such capacity is tested by the state of a testator's mind at the time the will is executed. *In re Estate of Villwok, supra.*

The burden is on the proponent of a will to prove the testamentary capacity of the testator. *In re Estate of Wagner, supra; In re Estate of Camin*, 212 Neb. 490, 323 N.W.2d 827 (1982). However, a self-proved will establishes prima facie proof of testamentary capacity. *In re Estate of Wagner, supra.* Moreover, the ultimate burden of proving undue influence remains at all times on the party asserting the issue, who must establish all necessary elements of undue influence. *Goff v. Weeks*, 246 Neb. 163, 517 N.W.2d 387 (1994).

Wade does not, and on this record cannot, assert that Ellis did not recognize Wade as her biological son. The fact that she expressly disinherited him in her will suggests not only that she was aware of his status, but that she also recognized him as a natural object of her bounty. The record also shows that Wade maintained occasional contacts with her over the years and that she allowed him to stay with her briefly when he was experiencing financial difficulties.

Nor are we swayed by Wade's suggestion that Ellis should be presumed to lack testamentary capacity merely because she chose to disinherit him. Nebraska has no public policy against disinheriting any descendant. *In re Estate of Hannan*, 2 Neb. App. 636, 513 N.W.2d 339 (1994), *reversed on other grounds* 246 Neb. 828, 523 N.W.2d 672. As explained in *In re Estate of Wahl*, 151 Neb. 812, 823, 39 N.W.2d 783, 790 (1949):

> [N]o right of a citizen is more valued and more assured by law than the power to dispose of his property by will. He is entitled to the control of his property while living, and by will to direct its use after his death, subject only to the restrictions which are imposed by statute. A testator may dispose of his property as he pleases. The law does not require that he recognize his relatives therein, nor does it put any obstacles in the way of the aged or infirm in making disposition of their property by will, provided only, that their mentality conforms to the accepted tests at the time of the execution of such testamentary instrument.

See, also, *In re Estate of Alexander*, 128 Neb. 334, 336, 258 N.W. 655, 656 (1935) ("Mr. Alexander might have disinherited his son entirely if he were so disposed").

█ Wade nonetheless suggests that material issues of fact exist regarding Ellis' testamentary capacity at the time the will was executed. As evidence of this, he offered an affidavit by Dr. Mark Diercks, a psychiatrist who examined Ellis' medical records from the Veterans Affairs Medical Center, the affidavits of two of Ellis' half-siblings, and the affidavits of two of Ellis' longtime adult neighbors. Diercks concluded, on the basis of those documents, to a reasonable degree of medical certainty, that Ellis suffered from a "schizotypal personality disorder" during her adult years, which he described as making an individual prone to deluded thought and eccentric convictions, and susceptible to making false or baseless conclusions. He further opined that Ellis' delusions "*could* include the false notion that Jerry Wade was not her son." (Emphasis supplied.) However, Diercks also stated that he could *not* say to a reasonable medical certainty that Ellis' denial of a son was the product of delusional thinking. This evidence fails to raise an issue as to Ellis' testamentary capacity *at the time she made her will*, which is the critical issue. "Conclusions based upon guess, speculation, conjecture, or a choice of possibilities do not create material issues of fact for purposes of summary judgment." *Kouma v. Blue Valley Co-op*, 6 Neb. App. 714, 718, 576 N.W.2d 854, 857 (1998).

█ Nor do the affidavits underlying Diercks' opinion create a credible inference of testamentary incapacity at the time the will was drafted. The affidavits of Ellis' half-siblings fail to address the specific issue of testamentary capacity, and both affidavits recount incidents that occurred well before the will was drafted, thus having little relevance to Ellis' testamentary capacity on the date the will was drafted. Similarly, the affidavits by Ellis' neighbors, though closer in time, also lack any assertion that Ellis lacked testamentary capacity.

> The question of testamentary capacity relates exclusively to the time when the will was made, and although competent evidence of the testator's condition of mind long before, closely approaching, and shortly after the time of its execution is admissible, it is received only to assist in revealing his state of mind at that time.

*Schlitz v. Topp*, 158 Neb. 583, 591, 64 N.W.2d 116, 121 (1954).

In sum, Wade failed to adduce evidence which shows, or creates a reasonable inference of, a lack of testamentary capacity as of the date the will was drafted. The trial court was accordingly correct in granting summary judgment on this issue.

*Undue Influence.*

Wade next argues that the trial court erred in concluding that no material issues of fact exist as to whether Garrett exercised undue influence over Ellis, inducing her to make him the primary beneficiary of the will. We affirm, albeit on other grounds. The trial court found that issues of fact existed as to whether Garrett exercised undue influence, but concluded that these issues were not material because the rule of partial invalidity made those issues immaterial. We find, for reasons set forth below, that Wade has not met his burden of showing that issues of fact exist as to at least two of the necessary elements of undue influence. A grant of summary judgment may be affirmed on any ground available to the trial court, even if it is not the same reasoning upon which the trial court relied. *Foreman v. AS Mid-America*, 255 Neb. 323, 586 N.W.2d 290 (1998).

"Not every exercise of influence will vitiate a will. Undue influence sufficient to defeat a will is such manipulation as destroys the free agency of the testator and substitutes another's purpose for that of the testator." *In re Estate of Peterson*, 232 Neb. 105, 110, 439 N.W.2d 516, 520 (1989). Specifically, in order to successfully contest a will on the ground of undue influence, a plaintiff must prove that (1) the testator was subject to undue influence, (2) there was an opportunity to exercise such influence, (3) there was a disposition to exercise such influence, and (4) the result was clearly the effect of such influence. *In re Estate of Novak*, 235 Neb. 939, 458 N.W.2d 221 (1990); *In re Estate of Villwok*, 226 Neb. 693, 413 N.W.2d 921 (1987); *In re Estate of Price*, 223 Neb. 12, 388 N.W.2d 72 (1986). Because undue influence is often difficult to prove with direct evidence, it may be reasonably inferred from the facts and circumstances surrounding the actor: his or her life, character, and mental condition. *Goff v. Weeks*, 246 Neb. 163, 517 N.W.2d 387 (1994). However, the party seeking to establish such influ-

ence has not met his or her burden of proof if all of the evidence is circumstantial and the inferences to be drawn therefrom are equally consistent with the hypothesis that undue influence was not exercised and the hypothesis that such influence was exercised. *Goff v. Weeks, supra*; *In re Estate of Price, supra.*

With regard to the first element, that being whether Ellis was subject to undue influence, the evidence shows that she lived alone, was estranged from her family, was regarded as cruel and eccentric by her half-siblings and by Wade, and was considered shy and withdrawn by her neighbors. However, it would be speculative at best to infer from these facts that she was therefore subject to undue influence. Compare *Nebraska Methodist Hospital v. McCloud*, 155 Neb. 500, 504-05, 52 N.W.2d 325, 327 (1952):

> [A]ll four of contestants' witnesses simply testified that in their opinion testatrix was "not of sound mind" or "not really of sound mind" or "I can't say she was slipping but then after she got most of the property to look after [. . .] She was not (of sound mind)." It appears, however, that not one question asked, nor any answer of such witnesses, to all of which proponent appropriately objected and moved to strike, even intimated much less stated any standard of mental quality upon which testamentary incapacity could be predicated. In other words, there was no competent evidence adduced by contestants to negative that testatrix: (1) Understood the nature of her acts; or (2) knew the extent of her property; or (3) understood the proposed disposition of it; or (4) knew the natural objects of her bounty. Thus the issue of testamentary capacity became a question of law for the court.

Similarly, Wade has simply failed to adduce facts which would support a reasonable inference that Ellis was susceptible to undue influence.

The second element that must be established to show that a will was the product of undue influence is the existence of an opportunity to exercise such influence. Wade asserts that such an opportunity existed due to Garrett's long-term status as Ellis' attorney. However, the existence of a confidential or fiduciary relationship does not, of itself, create a presumption of undue

influence. *In re Estate of Novak, supra.* It is instead a circumstance which, taken in connection with other suspicious circumstances, may justify an inference of undue influence. *Id.* Moreover, that inference may be rebutted by proof that the testator had competent independent advice and that the will was his or her own voluntary act. *Id.* Similarly, evidence that the party benefiting by the document executed made no attempt to keep others from seeing and conversing with the party tends to show the absence of a disposition to exert undue influence. *Goff v. Weeks, supra.*

The record shows that Garrett referred Ellis to Bradford in order to draft the will in question. Although Bradford subsequently testified that he had no independent recollection of his meeting with Ellis, he did state that his normal practice would have been to discuss the disinheritance of a child with a client prior to drafting the will and, also, that in the event a bequest was to be made to a client's regular attorney, Bradford would have refrained from discussing that bequest with that attorney. Although Wade suggests that Bradford did not provide independent advice to Ellis because Bradford had previously served as Garrett's attorney, and because Garrett was indebted to Bradford for past legal services, Wade has adduced no evidence showing that Garrett influenced, or attempted to influence, Bradford or to keep others from seeing and conversing with Ellis. We further note that in September 1989, while Garrett was still alive, Ellis initiated contacts with Bradford's office that would have resulted in a will which would not benefit Garrett in any way. The record does not show why this proposed will was never executed; however, the fact that Ellis was free to have it drawn up goes far to dispel any inference of undue influence by Garrett. We accordingly conclude that there are no grounds warranting an inference that Garrett had an opportunity to exercise undue influence over Ellis merely because he served as her attorney.

Wade strenuously argues that he is entitled to an inference that the third element of undue influence, a disposition by Garrett to exercise such influence, has been met. Wade points to the unsecured $12,000 loan from Ellis to Garrett in 1979, and also adduced testimony by Garrett's former law partner, Alfonza Whittaker, to the effect that Garrett was often in financial diffi-

culty and that in Whittaker's view, Garrett was disposed to exercise such influence over clients such as Ellis. Assuming arguendo that issues of fact do exist as to this element, the fact remains that Christian Crusaders is entitled to summary judgment if Wade cannot show that there are facts in dispute with respect to each element of undue influence. See *Boyle v. Welsh*, 256 Neb. 118, 589 N.W.2d 118 (1999). There, the Supreme Court cited with approval a Texas case, *Hall v. Stephenson*, 919 S.W.2d 454 (Tex. App. 1996), for the proposition that a defendant is entitled to summary judgment if the evidence establishes, as a matter of law, that at least one element of the plaintiff's cause of action cannot be established. Our holding that Wade has failed to show that material issues of fact existed with regard to the first two of the four elements of undue influence makes it unnecessary for us to consider whether Wade has done so with regard to the last two, and we will not do so. An appellate court is not obligated to engage in an analysis which is not necessary to adjudicate the case and controversy before it. *Springer v. Bohling*, 259 Neb. 71, 607 N.W.2d 836 (2000). We similarly need not and do not address the issue of whether the trial court properly applied the doctrine of partial invalidity.

In sum, Wade has failed to adduce evidence that would support any reasonable inference which would warrant a finding of undue influence, especially where, as here, such a finding could lead to a result clearly undesired by Ellis.

> "Mere suspicion, surmise or conjecture are not enough to warrant a finding of undue influence. There must be a solid foundation of established facts upon which to rest an inference of its existence. This proposition applies with peculiar force when the result of drawing such an inference is to destroy the effect of a written instrument prepared with deliberation and signed and attested with all the formalities required by law for the execution of a will."

*In re Estate of Thompson*, 153 Neb. 375, 385, 44 N.W.2d 814, 821 (1950).

Ellis clearly intended to disinherit Wade, as demonstrated by identical unequivocal provisions in both the executed will and in the proposed unexecuted will. She had the opportunity to change her will both before and after Garrett's death, as evi-

denced by her contacts with Bradford's office. She did not do so. The district court properly found that this record does not warrant setting aside her intentions as memorialized in the August 1, 1988, will.

## CONCLUSION

Because there is no genuine issue of material fact which would prevent the rendering of judgment as a matter of law, we affirm the judgment of the district court.

AFFIRMED.