158 N.J. Super. 507 (1978)
386 A.2d 875
GEORGE DEMAREST AND ELIZABETH DEMAREST, HIS WIFE, PLAINTIFFS-RESPONDENTS,
v.
MAYOR AND COUNCIL OF THE BOROUGH OF HILLSDALE, DEFENDANT-APPELLANT,
v.
HARVEY BROOKS, ET AL., INTERVENORS.
Superior Court of New Jersey, Appellate Division.
Argued March 14, 1978.
Decided April 13, 1978.
*508 Before Judges MATTHEWS, CRANE and ANTELL.
Mr. Walter T. Wittman argued the cause on behalf of appellant (Messrs. Wittman, Anzalone, Bernstein & Dunn, attorneys; Messrs. Walter T. Wittman and Michael I. Lubin on the brief).
Mr. Robert E. McGuire argued the cause on behalf of respondents (Messrs. Randall, Randall & McGuire, attorneys).
Mr. William DeLorenzo, Jr. argued the cause on behalf of the intervenors (Messrs. De Lorenzo and De Lorenzo, attorneys).
The opinion of the court was delivered by CRANE, J.A.D.
This is an appeal from a judgment of the Law Division in favor of plaintiffs and against defendant and intervenors, reversing the determination of the Mayor and Council of the Borough of Hillsdale and granting a variance to plaintiffs. The variance was sought by plaintiffs under N.J.S.A. 40:55-39(d) to permit the construction of a retail farm produce stand on a parcel of property approximately 3.5 acres in size in a one-family, single dwelling zone. They proposed to use the stand as an outlet for the produce grown on their 30-acre farm across the street.
*509 The zoning board of adjustment recommended by a 3-2 vote that the variance be granted. The board found that the requested use would promote the general welfare by "(a) participating in the preservation of open space to maintain the ecological balance of the Borough and the State, (b) to provide for the residents a source of farm fresh, fruits and vegetables." The board also concluded that the variance could be granted without substantial detriment to the public good or impairment of the intent and purpose of the zone plan and zoning ordinance.
The mayor and council did not accept the zoning board's recommendation. By a vote of 3-1 a resolution denying the variance was adopted. The resolution recited findings that to permit a retail store of the size and scope proposed by the applicants would introduce a substantial commercial enterprise into a residential zone and would thereby substantially impair the intent and purpose of the zone plan; that the applicants failed to establish that the property could not be used for residential purposes, and that the fact that the proposed use will permit the applicants to profitably continue the farming operations on their surrounding property and thereby have the effect of preserving open space for as long as they find it profitable to farm does not constitute a special reason.
In a written opinion the trial judge traced the history of the Demarest family from 1663 to the present as it relates to the ownership and operation of the farm. He found that farming is an inherently beneficial use and that a retail sales outlet is an essential and integral part of farm operation. He agreed with the board of adjustment that the benefit to the farm satisfies the affirmative criteria and that there would be minimal negative impact. He further found that "The Bergen County farm is an endangered species on the brink of extinction. If we permit it to disappear, an important part of our heritage will vanish. This is another `special reason' that calls for judicial intervention." On the authority of South Burl. Cty. N.A.A.C.P. v. Mt. Laurel Tp., *510 67 N.J. 151 (1975), cert. den. 423 U.S. 808, 96 S.Ct. 18, 46 L.Ed.2d 28 (1975), he finally concluded that "Hillsdale's fair share of Bergen County's present and prospective farm needs is to endure the inconvenience of an up-dated farm store."
Aside from the trial judge's invocation of Mt. Laurel, we can well understand the rationale of his decision. And if it had been the decision of the mayor and council it might well have merited judicial affirmation. But here the trial judge undertook to weigh anew the underlying factual considerations and to decide the controversy according to his notion of what was in the best interests of the citizenry. In doing so he overstepped the bounds of permissible judicial review.
We said in Kenwood Assocs. v. Englewood Bd. of Adj., 141 N.J. Super. 1 (App. Div. 1976), that:
It has been emphasized over and over again in the many cases on the subject that the role of a judge in reviewing a local variance determination is solely to ascertain whether the action of the board is arbitrary. He cannot substitute his own judgment for that of the municipal board invested with the power and duty to pass upon the application. Stolz v. Ellenstein, 7 N.J. 291 (1951); Peoples Trust Co., etc. v. Hasbrouck Heights, etc., 60 N.J. Super. 569 (App. Div. 1959).
The action of the board is presumed to be valid. Rexon v. Haddonfield Bd. of Adj., 10 N.J. 1, 7 (1952); Bove v. Emerson Bd. of Adj., 100 N.J. Super. 95, 101 (App. Div. 1968). And particularly where the board has denied a variance, plaintiff has the heavy burden of establishing that the evidence is so overwhelming in support of the variance that the board's action can be said to be arbitrary and capricious. Rexon v. Haddonfield Bd. of Adj., supra; Ring v. Rutherford Mayor and Council, 110 N.J. Super. 441 (App. Div.), certif. den. 57 N.J. 125 (1970), cert. den. 401 U.S. 911, 91 S.Ct. 876, 27 L.Ed.2d 810 (1971). See Cummins v. Leonia Bd. of Adj., 39 N.J. Super. 452, 460 (App. Div. 1956). [at 4-5]
We are enjoined to remember that local officials "who are thoroughly familiar with their community's characteristics and interests and are the proper representatives of its people, are undoubtedly the best equipped to pass initially on such applications for variance." Ward v. Scott, 16 N.J. *511 16, 23 (1954). The judicial philosophy favoring support for local zoning decisions has been said to be "`even more cogently applicable to a case where we review a denial of a variance than where we review a grant, for generally speaking more is to be feared from a breakdown of a zoning plan by ill-advised grants of variances than by refusals thereof.'" Mahler v. Fair Lawn, 94 N.J. Super. 173, 186 (App. Div. 1967), aff'd o.b. 55 N.J. 1 (1969).
Both the proponents and the opponents presented credible testimony of lay persons as well as expert witnesses before the board of adjustment in support of their respective positions. As is indicated by the divided votes of the board and the council, the question of whether the variance should be granted or not was highly controversial and debatable. It was the kind of issue on which the minds of reasonable persons could differ. Where the issues are of such a nature the judiciary must defer to the discretionary judgment of the local officials because of their familiarity with the community and the wants and needs of the people they represent. Kramer v. Sea Girt Bd. of Adj., 45 N.J. 268, 296 (1965). In the absence of proof of arbitrariness, a reviewing court is constrained to uphold the local determination regardless of its independent view of the wisdom of the decision to grant or deny the variance. Miriam Homes, Inc. v. Perth Amboy Bd. of Adj., 156 N.J. Super. 456 (App. Div. 1976), aff'd 75 N.J. 508 (1978).
The Mt. Laurel decision on which the trial judge relied in part dealt with the constitutional validity of a zoning ordinance which by its operation excluded low and moderate-income housing from a developing municipality. The principles announced therein have no application to judicial review of a resolution denying a variance from the requirements of a presumptively valid ordinance. It is not the proper function of the courts to decide what land uses are appropriate from the standpoint of the public welfare. That function is vested in the legislature and the local officials. *512 Pascack Ass'n, Ltd. v. Washington Tp. Mayor & Council., 74 N.J. 470, 485 (1977).
The judgment of the Law Division is reversed.