AMERICAN STORES PACKING COMPANY, A DIVISION OF
ACME MARKETS, INC., APPELLEE, V. JUDITH E.
JORDAN, APPELLANT.

328 N.W.2d 756

Filed December 30, 1982. No. 81-691.

Terry K. Barber of Johnston, Barber & Wherry, for appellant.

J. Taylor Greer of Woods, Aitken, Smith, Greer, Overcash & Spangler, for appellee.

KRIVOSHA, C.J., BOSLAUGH, MCCOWN, CLINTON, WHITE, HASTINGS, and CAPORALE, JJ.

McCOWN, J.

This is an action by the complainant, Judith Jordan, alleging that she was discharged from her employment because of unlawful racial discrimination. On appeal from an order of the human rights commission of the city of Lincoln, Nebraska, reinstating complainant, the District Court found that complainant's discharge was for just and sufficient cause unrelated to race or color. The District Court reversed the order of the human rights commission and dismissed the complaint. Complainant has appealed.

Jordan, a black woman, was employed by American Stores Packing Company on October 28, 1974. After a probationary period she obtained a seniority date of January 1, 1975. During the period of her employment with American Stores she worked chiefly in the bacon department as an arranger on the bacon slice line. Two arrangers work on each bacon slice line, one on each side of the conveyor belt. The arrangers arrange the bacon slices on a card and then place the arranged cards of bacon on another conveyor belt leading to a vacuum packing machine.

On Wednesday, January 28, 1976, Jordan was working as an arranger on the south side of a bacon slice line and Maxine Lehnherr, a white woman, was working across from her as the arranger on the north side of the line. Lehnherr had previously suffered an on-the-job accident, which caused some nerve and blood vessel injury to her right shoulder, and she found it painful for her to work at her usual position on the north side of the line because of the reaching and stretching of her right arm and shoulder on that side. Lehnherr had a letter from her doctor recommending that she avoid repeated use of her right arm and shoulder.

During work on January 28, Lehnherr asked the supervisor of the shift if she could trade positions with Jordan because her right arm was painful. The supervisor asked Jordan if she would mind trading positions with Lehnherr at the next break and Jordan said she would not mind.

Before the break, however, another employee, Delores Napue, told Jordan that she should not have to switch positions because she had seniority over Lehnherr, and also told Jordan that a posted notice forbade trading jobs by the employees. Jordan told the supervisor of her conversation with Napue, and the supervisor advised her that he did not think seniority mattered in the particular situation but he had another employee switch positions with

Lehnherr and permitted Jordan to stay at her regular position.

On Thursday, January 29, the shift supervisor checked with his superior and with the personnel director of the company with respect to the situation and was informed by the personnel director that a supervisor could change work assignments without regard for seniority whenever the change was required for medical reasons. Later on the same day Jordan, without seeking permission, voluntarily changed sides with another employee who was having trouble working on the north side of the line.

On Friday, January 30, Lehnherr's right arm was still bothering her and she asked the supervisor if she could change sides of the line. The supervisor asked Jordan to change and told her that seniority did not matter and ordered her to change positions with Lehnherr. Jordan refused, and the supervisor told her to either change positions, go to the personnel office, or go home.

Jordan went to the personnel office where the associate personnel director informed her that she was required to follow the supervisor's order. Jordan then talked to her union steward, who also advised her to change sides. After approximately 25 minutes of discussion Jordan agreed to change sides with Lehnherr and returned to work.

On Monday, February 2, Lehnherr and Jordan went to work again on the same line, with Lehnherr on the north side. Lehnherr's arm again began to pain her and she again requested a change. The supervisor ordered Jordan to change sides but she refused. The supervisor ordered her to change positions or to leave the plant. Both the union shop steward and the business agent of the union advised Jordan to follow the supervisor's order. Jordan refused and left the plant at midshift after approximately 4 hours of work.

On February 3 the personnel director held a hearing regarding the incidents of January 30 and Febru-

ary 2. Jordan, two union representatives, and the supervisor were all present. The only reasons given by Jordan for her refusal to change sides were that her seniority gave her the right to choose sides and that there was a posted notice forbidding employee job trading. At the conclusion of the hearing the personnel director informed Jordan that she was suspended without pay pending further investigation.

Following an additional hearing on February 13, 1976, the personnel director informed Jordan that she was discharged for insubordination for her conduct on January 30 and February 2 in violation of rules 26 and 42 contained in the employees' handbook.

On February 6, 1976, Jordan filed a complaint with the human rights commission of the city of Lincoln alleging that the actions of American Stores Packing Company constituted an unlawful employment practice because it discriminated against her on account of race or color in violation of Lincoln Municipal Code § 11.08.040 (1973). That ordinance provides in part: "It shall be an unlawful employment practice for an employer: . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his . . . conditions or privileges of employment, because of such individual's race, color . . . ."

The commission concluded there was reasonable cause to believe the charge was valid and a formal hearing was had before the commission in several sessions, concluding on May 2, 1978. Evidence establishing the facts outlined above was introduced and received. Jordan introduced evidence of five alleged racially discriminatory statements or incidents occurring between employees, some of which may have been overheard by supervisory personnel. The employer introduced evidence tending to establish that the discharge of Jordan was for legitimate and necessary business reasons and for just and

sufficient cause unrelated to any racial discrimination.

The evidence also showed that Jordan had filed a complaint with the Nebraska Equal Opportunity Commission in 1975 alleging racial harassment by American Stores, and complaints in February of 1976 with both the Nebraska Equal Opportunity Commission and the federal Equal Employment Opportunity Commission, also alleging racial harassment by American Stores. In all three cases the commissions had found there was no probable cause to believe that the charges were true and dismissed the complaints.

On June 6, 1978, the human rights commission entered its order finding that an atmosphere of racial antagonism existed at the American Stores plant as evidenced by five racially discriminatory statements or incidents occurring among employees, and found that the management was aware of the racially antagonistic atmosphere. The commission made no finding as to whether Jordan's conduct on January 30 and February 2, 1976, constituted insubordination, nor whether she was discharged because of her race. The commission ordered Jordan reinstated and awarded her one-half of the wages she would have earned after her discharge.

The employer appealed to the District Court and Jordan cross-appealed. The cross-appeal requested the award of full back pay rather than one-half. On June 26, 1981, after trial de novo on the record made before the human rights commission, the District Court found the evidence insufficient to establish any violation, either intentional or unintentional, of Lincoln Municipal Code, Ch. 11.08 (1973). The court also found complainant's conduct constituted insubordination and that her discharge was for just and sufficient cause, unrelated to race or color. The District Court therefore reversed the order of the human rights commission and dismissed the complaint. The complainant has appealed.

An appeal to the District Court from an order or decision of the human rights commission of a city of the primary class in an employment discrimination case is heard as in equity and without a jury. The District Court is to determine anew all questions raised before the commission and may reverse or affirm, wholly or partly, or may modify the order or decision brought up for review. See Neb. Rev. Stat. § 15-1205 (Reissue 1977).

In an appeal in an equity action it is the duty of this court to try issues of fact de novo upon the record and to reach an independent conclusion thereon without reference to the findings of the District Court. *Schupack v. McDonald's System, Inc.,* 200 Neb. 485, 264 N.W.2d 827 (1978).

In *Duffy v. Physicians Mut. Ins. Co.,* 191 Neb. 233, 214 N.W.2d 471 (1974), in an employment discrimination case under a state statute containing language identical to the municipal ordinance involved here, this court held that to sustain a charge of discrimination where there is no charge of a universal discriminatory practice or system, complainant, in the record, must establish that the employer intentionally engaged in acts that discriminated against complainant in violation of the statutory prohibitions.

It is clear in the present case that the charge related solely to the discharge of the individual complainant. Lincoln Municipal Code § 11.08.150(c) (1973) states that the human rights commission "shall determine that the respondent has intentionally engaged in or is intentionally engaging in any unlawful employment practice" before ordering any affirmative action.

The commission in this case failed to find that the respondent had intentionally engaged in discriminatory conduct and also failed to make any finding as to whether the complainant's conduct constituted insubordination. There is no evidence in the record that the management of the employer intended to

discriminate against the complainant because of her race, nor that it intentionally or unintentionally discriminated against her because of her race. There can be no reasonable doubt that the complainant's conduct constituted repeated insubordination.

The record fully supports the conclusion that the employer's conduct in suspending and discharging the complainant was motivated by sound business reasons and not by unlawful discriminatory motives.

The District Court was correct in all respects and the judgment is affirmed.

AFFIRMED.