KEITH H. PREISTER AND JANICE M. PREISTER, HUSBAND AND WIFE, APPELLANTS AND CROSS-APPELLEES, V. MADISON COUNTY, NEBRASKA, A BODY POLITIC, ET AL., APPELLEES AND CROSS-APPELLANTS.

606 N.W.2d 756

Filed February 11, 2000.    No. S-98-471.

Stephen D. Mossman, of Mattson, Ricketts, Davies, Stewart & Calkins, for appellants.

Charles W. Campbell, of Angle, Murphy, Valentino & Campbell, P.C., for appellees.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

HENDRY, C.J.

## INTRODUCTION

Keith H. Preister and Janice M. Preister brought a claim against Madison County, Nebraska, and the County Commissioners of Madison County (collectively the county) asserting, inter alia, that road work done by the county in 1993 worked a taking of their land in violation of 42 U.S.C. § 1983 (Supp. III 1997), the Fifth Amendment to the U.S. Constitution, and art. I, § 21, of the Nebraska Constitution.

## FACTUAL BACKGROUND

The Preisters have lived and farmed in Madison, Nebraska, since the late 1960's. The Preisters own a section of land, com-

monly known as the Haschke quarter (the Quarter), which is the focus of this litigation. Abutting the south side of the Quarter is a county road, known as Five Mile Road, that runs east to west.

The Quarter is a flat, low-lying area. Union Creek cuts through the northwest portion of the Quarter, flowing to the northeast. The Quarter as a whole drains to the northeast and eventually into Union Creek. The Quarter is in a flood plain, which means that in the event of a 100-year flood, the land would be under water.

Five Mile Road has a history of becoming overtopped with water and impassable during heavy rains. Prior to 1993, at the east end of the Quarter, Five Mile Road had a slight dip, and water tended to collect in the dip after heavy rains.

In 1993, after a 100-year flood event, the county decided to raise the level of Five Mile Road as a solution to the recurring flooding. The county raised Five Mile Road and installed culverts. The culverts acted to remove water from the property south of Five Mile Road and empty the water onto the Quarter.

In 1996, the Preisters brought suit against the county. The Preisters sought permanent damages for land taken by the county's actions and temporary crop damages for the years from 1994 through 1996. The Preisters also sought injunctive relief, asking that the county be ordered to remove two of the culverts and conduct a hydrological study of the area.

Arland Gross, foreman for the county's road department since 1990, testified that during the summer of 1993, the county scooped out the drainage ditches on both sides of Five Mile Road and placed the dirt in piles on the road. This dirt, along with dirt from other areas, was eventually smoothed out and leveled into a new road surface, with gravel placed on the top.

The county then replaced a single 3-foot culvert at the southwest corner of the Quarter with two 4-foot culverts (the west culverts). The county also added a new culvert (the east culvert) at the southeast corner of the Quarter where the dip in the road had been. This culvert was added in part to alleviate standing water on the road.

Robert Dupsky, another employee of the county's road department, testified that after the east culvert was installed, the county used a backhoe and "scratched around" to start a

drainage path for the east culvert. This path directed the water out of the drainage ditch and across the Preisters' property.

Janice Preister testified that prior to 1993, the east end of the property would flood along with the rest of the property in heavy rain, but the water spread out across the entire area. Prior to 1993, they were able to farm the entire east end and drove their equipment in and out of the property at the east end. After the road work, they were not able to farm all of the land and they could no longer drive their equipment in and out of the Quarter at the east end because of the mud and standing water caused by the new drainageway.

LaVerne Torczon, a real estate appraiser, testified as to the fair market value of the land in the Quarter. He testified that the land was located in a flood plain and was fit only for agricultural use. Using a comparable sales appraisal method, he estimated that the fair market value of the land was $1,050 per acre. Torczon's testimony regarding the fair market value of the land, and its limited use for agricultural purposes, was not refuted by the county.

Both Patrick Diederich, hydrology expert for the county, and Lee Becker, hydrology expert for the Preisters, testified about the effect that raising Five Mile Road and installing the culverts had on the surrounding land. They agreed that Five Mile Road was sufficiently raised by the road work to cause more water to back up onto the south side of the road during heavy rains, but disagreed as to whether the backed-up water had a significant effect on the Preisters' land.

Becker testified that prior to the road work, floodwaters would reach the east end of the Quarter only if the water came up over the road, and then the water would be generally diffused over the entire area. He further stated that there was no evidence that a significant drainageway existed at the east end of the Quarter before the road work occurred. After the road work was completed, the higher road level and the additional culvert caused water to enter the east end much more frequently, in a concentrated fashion, cutting away at the soil. This concentration of waterflow produced the new drainageway on the east end of the Quarter. Regarding the west culverts, Becker testified that replacing one 3-foot culvert with two 4-foot culverts at least

doubled the amount of floodwater that would empty onto the west half of the Quarter.

Becker concluded that the county, by raising Five Mile Road and installing the culverts, created a new drainageway across the east end of the Quarter and enlarged the drainage channel on the west end. These actions by the county, according to Becker's calculations, permanently damaged 7 acres of the Quarter.

Diederich testified that there was evidence of a natural drainageway existing on the east end of the Quarter prior to the road work. This evidence consisted of an aerial photograph taken of the Quarter and surrounding areas in the spring of 1993. Diederich also determined that the drainageway from the single west culvert was not changed by the road work.

On cross-examination, Diederich admitted that he had viewed the property in question the day before he testified. He observed water standing in the east end of the Quarter, north of the east culvert, although none of the area surrounding the Quarter was flooded. Diederich also testified that the U.S. Geological Survey maps he consulted did not indicate any intermittent waterflow lines on or near the east end of the Quarter prior to 1993. In addition to considering the testimony from witnesses and the exhibits, the court, at the request of the parties, viewed the land in question.

The trial court, sitting without a jury, rendered its opinion in the case on April 22, 1998. The court found that the Preisters were not entitled to crop damages because the evidence failed to quantify the amount of damages attributable solely to the county's road work. The court also denied the Preisters any form of injunctive relief, finding that the county's need to avoid the flooding of Five Mile Road outweighed the Preisters' claims for injunctive relief.

The court did find, however, that the Preisters' land was damaged by the installation of the east culvert. The court stated that

the water [from the east culvert] now has essentially taken a part of plaintiffs' farm ground on the east side out of production . . . .

. . . .

. . . Having considered the testimony and evidence, and its view of the property, the Court finds that the

> property damaged by flow from the east culvert is a strip
> approximately 100 feet wide and 1300 feet in length . .
> . . This constitutes approximately three acres . . . .

The court categorized the effect of the east culvert as "property damage" under the Nebraska Constitution, rather than as a taking. The court awarded the Preisters the total fair market value of the 3 acres, $3,150.

The court denied any recovery for alleged damage to the land based on the west culverts, finding that there was no evidence of greater damage to the land caused by replacing the single culvert with the two larger ones. The court further found that the Preisters' § 1983 cause of action failed because there was not a taking under the U.S. Constitution. Because the § 1983 action failed, the court determined that the Preisters were not entitled to attorney fees under 42 U.S.C. § 1988 (1994 & Supp. III 1997).

The Preisters appealed the trial court's decision to the Nebraska Court of Appeals, asserting that the trial court erred in not awarding recompense for the crop damages, in refusing injunctive relief, in awarding damages for 3 acres rather than 7 acres, and in failing to award attorney fees under § 1988, because the findings of the trial court showed that in fact a taking had occurred. The county cross-appealed, asserting that the trial court erred in awarding the Preisters $3,150 in damages because the Preisters did not prove the difference in the value of the land before and after the road work and because the trial court's findings regarding the amount of land taken were not supported by sufficient evidence.

The Court of Appeals affirmed the trial court's decision in all respects except for the award of $3,150 in damages, which was reversed. *Preister v. Madison County*, No. A-98-471, 1999 WL 452203 (Neb. App. June 8, 1999) (not designated for permanent publication). The court determined that under article I, § 21, of the Nebraska Constitution, in order to recover when property is damaged but not taken, the measure of damages is the difference between the land's value before and after the damage occurs, rather than the land's fair market value. *Id.* The Court of Appeals further determined that because the award of damages was being reversed, the Preisters were not the prevailing parties and thus

it need not reach the issue of attorney fees. *Id.* The Preisters then petitioned this court for further review, which we granted.

## ASSIGNMENTS OF ERROR

The Preisters asserted in their petition for further review that the Court of Appeals erred in (1) holding that the Preisters were not entitled to $3,150 for permanent damages to their property when in fact the Preisters' land was taken by the county, (2) denying the Preisters' motion for attorney fees pursuant to § 1988 when the Preisters were the prevailing party, (3) failing to award the Preisters crop damages for the years from 1994 through 1996, and (4) failing to grant the Preisters injunctive relief.

## STANDARD OF REVIEW

In an appeal from an equitable action, the reviewing court reviews the action de novo on the record and reaches a conclusion independent of the factual findings of the lower court; however, where credible evidence is in conflict on a material issue of fact, the reviewing court considers and may give weight to the circumstance that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Whitehead Oil Co. v. City of Lincoln*, 245 Neb. 660, 515 N.W.2d 390 (1994).

## ANALYSIS

Upon granting the petition for further review, we limited our review to the following issues: (1) whether a taking of the Preisters' land occurred under the Fifth Amendment to the U.S. Constitution; (2) whether, if there was a taking, there was an appropriate measure of damages; and (3) whether the Preisters are entitled to attorney fees pursuant to §§ 1983 and 1988. See Neb. Ct. R. of Prac. 2G (rev. 1999).

Under the Supremacy Clause of the U.S. Constitution, state courts have a concurrent duty to enforce federal law. *Howlett v. Rose*, 496 U.S. 356, 110 S. Ct. 2430, 110 L. Ed. 2d 332 (1990). A court may not deny or ignore a federal right when the parties and controversy are properly before it. *Id.* Over 100 years ago, in *Pumpelly v. Green Bay Company*, 80 U.S. (13 Wall.) 166, 181, 20 L. Ed. 557 (1871), the U.S. Supreme Court

held that "where real estate is actually invaded by superinduced additions of water, earth, sand, or other material, or by having any artificial structure placed on it, so as to effectually destroy or impair its usefulness, it is a taking, within the meaning of the Constitution . . . ." See, also, *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 102 S. Ct. 3164, 73 L. Ed. 2d 868 (1982). Regarding the west culverts, we conclude, based on our de novo review of the record, that an established drainageway physically occupied the west end of the Quarter prior to the road work. While Becker testified that replacing the single west culvert with two larger culverts would increase the flow of water in the drainageway, the evidence fails to show that this increased volume actually enlarged the size of the west drainageway. Thus, we determine, as did the trial court, that there has been no damage or taking with regard to the effect of the west culverts.

However, as set out below, we conclude that the county's actions in adding a culvert to the east end of the Quarter resulted in a taking of the Preisters' property in the form of a permanent physical occupation of the east end of the Quarter by a new drainageway.

The county asserts that there was no taking because a drainageway existed across the east end of the Quarter prior to the road work. However, our de novo review of the evidence shows that there was no channel or drainageway across the east end until after the road work was completed. Janice Preister testified that prior to the road work, when the Quarter flooded, the floodwater at the east end would diffuse across the entire area. She also testified that prior to the road work, the Preisters farmed all of the east end, but that now, because of the new drainageway, they cannot. Both experts admitted that the effect of the east culvert was to send more frequent amounts of water to the east end of the Quarter. In fact, the county's expert testified that in the spring of 1998, there was standing water in the east end of the Quarter even when no flooding occurred.

The county relies on a 1993 aerial map of the area taken prior to the road work—but during heavy flooding—to assert that a drainageway existed at the east end of the Quarter prior to the road work. We note that under our standard of review, where credible evidence is in conflict on a material issue of fact, we

may give weight to the circumstance that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Whitehead Oil Co. v. City of Lincoln*, 245 Neb. 660, 515 N.W.2d 390 (1994). In the present case, the trial court listened to the testimony of the Preisters and two hydrology experts, in addition to viewing the land in question. The trial court found that the east culvert concentrated floodwaters onto the east end of the Quarter in a manner that did not occur prior to the road work. We conclude, as did the trial court, that the drainageway across the east end of the Quarter did not exist prior to the county's road work in 1993.

◼ The county further argues that the Quarter is simply prone to flooding; thus, the creation of any additional drainageway at the east end of the Quarter caused by the road work is irrelevant. However, when the character of a governmental action is a permanent physical occupation of property, there is a taking to the extent of that occupation. *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 102 S. Ct. 3164, 73 L. Ed. 2d 868 (1982).

We find, under our de novo review, that the east end of the Quarter has been permanently occupied by a new drainageway. This drainageway was created by the county's actions in raising Five Mile Road and installing the east culvert in 1993. The new drainageway renders a portion of the Quarter unfit for use. See *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. at 436 ("the permanent physical occupation of property forever denies the owner any power to control the use of the property"). The county's actions in creating a new drainageway at the east end of the Quarter resulted in a taking of the Preisters' land in violation of the Fifth Amendment to the U.S. Constitution.

## DAMAGES

◼ The Preisters are entitled to the fair market value of the portion of land taken. *United States v. 50 Acres of Land*, 469 U.S. 24, 25-26, 105 S. Ct. 451, 83 L. Ed. 2d 376 (1984) ("Fifth Amendment requires . . . 'just compensation'—normally measured by fair market value—whenever it takes private property for public use"); *United States v. 564.54 Acres of Land*, 441 U.S. 506, 99 S. Ct. 1854, 60 L. Ed. 2d 435 (1979). The Court of

Appeals correctly concluded that without evidence of the difference between the value of the land before and after the damage, the Preisters were not entitled to a property damage award under our state Constitution. However, under the Fifth Amendment to the U.S. Constitution, when the government has worked a complete physical taking of the land, the landowner need only show the fair market value of the land taken. See *United States v. 50 Acres of Land, supra.*

The county asserts that the trial court erred in determining that the east culvert took 3 acres of the Preisters' land. The county asserts that the trial court had no evidence upon which to determine the specific amount of land taken by the east culvert because the expert for the Preisters testified only that 7 acres, combined, were affected by the east and west culverts. We disagree.

The record shows that the trial court viewed the land in question and, in its findings, gave the specific dimensions of the new drainageway across the east end of the Quarter. The trial court's findings are also supported by various exhibits and photographs of the area before and after the road work. When the trial court has viewed the land in question, an appellate court is required to consider and may give weight to any findings made by the trial court, provided that the record contains competent evidence to support the findings. *Riha v. FirsTier Bank*, 248 Neb. 785, 539 N.W.2d 632 (1995).

Based on our de novo review, we conclude that the evidence shows that the Preisters are entitled to $3,150 in damages, the fair market value of 3 acres of land taken by the county's actions.

## ATTORNEY FEES

Given that we have found that the county violated the takings clause of the Fifth Amendment, we next consider attorney fees under § 1988(b), which provides in relevant part: "In any action or proceeding to enforce a provision of . . . § 1983 . . . of this title . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . ." See, also, *Shearer v. Leuenberger*, 256 Neb. 566, 591 N.W.2d 762 (1999).

■ The U.S. Supreme Court has held that a plaintiff is considered a prevailing party when he or she obtains actual relief on the merits of any of the asserted claims, but need not prevail on all claims. See *Farrar v. Hobby*, 506 U.S. 103, 113 S. Ct. 566, 121 L. Ed. 2d 494 (1992). Further, relief need not be judicially decreed in order to justify a fee award under § 1988(b). *Id.* See, also, *Shearer v. Leuenberger, supra.* Accordingly, we determine that the Preisters are entitled to reasonable attorney fees under §§ 1983 and 1988.

## CONCLUSION

The decision of the Court of Appeals finding that the Preisters were not prevailing parties and were not entitled to $3,150 in damages is reversed. The cause is remanded to the Court of Appeals with directions to remand to the district court for Madison County for entry of judgment on behalf of the Preisters and against Madison County in the sum of $3,150 in damages for the taking of 3 acres of the Preisters' land and for a determination of attorney fees consistent with this opinion.

The Preisters are further granted 2 weeks' leave to file a motion in support of any claimed attorney fees for services rendered in the Court of Appeals and this court. See Neb. Ct. R. of Prac. 9F (rev. 1999).

REVERSED AND REMANDED
WITH DIRECTIONS.